**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | **Case No. 2-00-CR-50** |
| **Plaintiff,** | : | |
| | : | **CHIEF JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | |
| **JAY TANIGUCHI,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>OPINION & ORDER</u>**

This matter comes before the Court on Defendant Jay Taniguchi's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 267). For the following reasons, Defendant's Motion is **GRANTED**.

## I.      BACKGROUND

On November 15, 2000, Jay Taniguchi was sentenced to mandatory minimum of 504 months of imprisonment and 5 years of supervised release, a sentence enhanced pursuant to 18 U.S.C. § 924(c)(1)(C) for brandishing, using, and carrying a firearm during and in relation to a crime of violence. (ECF No. 267). On February 14, 2019, Mr. Taniguchi filed a *pro se* Rule 60(b)(6) motion for relief from a final judgment. (ECF No. 263). On April 16, 2019, this Court construed the Rule 60(b)(6) motion as a Motion for Relief under the First Step Act ("FSA"). (ECF No. 264). Because Mr. Taniguchi's sentence was enhanced pursuant to 18 U.S.C. § 924(c)(1)(C) for brandishing, using, and carrying a firearm during and in relation to a crime of violence, this Court found that Mr. Taniguchi was ineligible for relief under the FSA and denied his motion. (*Id.*).

On June 11, 2020, Mr. Taniguchi filed a *pro se* Motion for Sentence Reduction under the FSA, in which he argues that Congress's "dramatic reduction under the FSA" of penalties for "'stacked' § 924(c) convictions" constituted extraordinary and compelling reasons justifying a reduction in his sentence. (ECF No. 267). He also argues that the reduction in sentence under the FSA is justified due to the COVID-19 pandemic and his medical conditions that he alleges put him at greater risk of contracting a fatal case of COVID-19. (*Id.*). On September 24, 2020, the Government filed a response in opposition to Mr. Taniguchi's motion. (ECF No. 269). In response, the Government argued that no "extraordinary and compelling reasons" have been set forth that meet the definition in policy statement U.S.S.G. § 1B1.13, that this Court may not disregard the policy statement, and that Congress declined to provide retroactive relief to defendants like Mr. Taniguchi. (*Id.*). On October 16, 2020, Mr. Taniguchi filed a Reply reiterating that he has set forth "extraordinary and compelling reasons" in support of a sentence reduction and arguing that federal courts may determine whether reasons other than those delineated in U.S.S.G. § 1B1.13 warrant relief. (ECF No. 271).

## II.    LAW & ANALYSIS

Pursuant to 18 U.S.C. § 3582(c)(1)(A), a sentencing court may "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons," but only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 595 n.1, 597 (3d Cir. 2020). Mr. Taniguchi indicated he submitted a formal request for reduction in sentence to Warden Linda Geter on April 29, 2020 and that the BOP failed to bring a motion on his request within 30 days. (ECF No. 267). He submitted a copy

of the request with his Motion to the Court. (*Id.*). The Government concedes that Mr. Taniguchi was entitled to file his motion under 18 U.S.C. § 3582(c)(1)(A). (ECF No. 269 at 2 n.1). This Court finds that Mr. Taniguchi has demonstrated that he has met the administrative exhaustion requirement because it has been more than thirty days since his formal request was filed with the BOP. (ECF No. 267).

Turning to the merits of the "extraordinary and compelling reasons" for release, the Court looks at the applicable Sentencing Commission policy statement. U.S.S.G. 1B1.13 sets forth four categories that can constitute "extraordinary and compelling" reasons:

(A) Medical Condition of the Defendant.

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

3

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. 1B1.13 (A)-(D).

### A. District Court Discretion to Determine "Other Reasons" under U.S.S.G. 1B1.13(D).

At the outset, the parties here dispute whether the policy statement is binding on this Court or whether this Court may independently determine what constitutes "extraordinary and compelling" reasons for purposes of compassionate release. The Government's position is that policy statement U.S.S.G. § 1B1.13 is binding on courts considering motions for compassionate release and that, in particular, Application Note 1(D) to the policy statement vests exclusive discretion in the BOP to determine any "other" reasons under subsection (D). (ECF No. 269 at 5–6). The Government notes that a number of district courts have found that courts may now define the circumstances permitting compassionate release, but characterizes these decisions as "unpersuasive." (*Id.* at 8–9). In its Response and in a later-filed notice of relevant authority, the Government has identified conflicting decisions by the Courts of Appeal on this issue. (ECF No. 269 at 10–11; ECF No. 270). In his Reply, Mr. Taniguchi reiterates that a number of district courts, including within the Sixth Circuit, have held that a court may define circumstances permitting compassionate release, "unfettered by the Commission's policy statement." (ECF No. 271 at 3).

This Court finds that it has the discretion to determine what circumstances may permit compassionate release under Subsection (D), as U.S.S.G. § 1B1.13 Application Note 1(D) is outdated and no longer "applicable" within the meaning of § 1B1.13. The Sentencing Commission's policy statement "has not been amended to reflect that, under the First Step Act, a defendant may now move for compassionate release after exhausting administrative remedies." *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).

4

Rather, the policy statement still contemplates that only BOP may move for compassionate release on an incarcerated person's behalf. As such, the existing policy statement provides "helpful guidance," but "is not ultimately conclusive given the statutory change." *Id.* The Sixth Circuit has not yet considered the issue of whether § 1B1.13 is still applicable to motions brought by defendants on their own behalf.[1] In *United States v. Brooker*, --- F.3d ---, 2020 WL 5739712 (2d Cir. Sept. 25, 2020), the Second Circuit found that "it is manifest that [Guideline § 1B1.13's] language is clearly outdated and cannot be fully applicable." 2020 WL 5739712 at *6. While the Second Circuit noted that it could justifiably read the Guideline as wholly abolished, it declined to do so and instead preferred "to save as much of the Guideline language and policy as possible." *Id.* As such, the Second Circuit held that the Guideline survived, but was only applicable to those motions still brought by BOP, rather than by a defendant on his or her own behalf. *Id.* For those defendants bringing their own motions for compassionate release, "Guideline § 1B1.13 does not, by its own terms, apply" to such motions and as a result, Application Note 1(D) "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling." *Id.* This Court finds the reasoning set forth by the Second Circuit in *Brooker* to be compelling.

During the COVID-19 pandemic, this Court has considered motions by defendants which do not neatly fall into any of the limited categories set forth in Application Note 1(D), but that in the context of the COVID-19 pandemic, this Court has found "extraordinary and compelling circumstances" beyond those detailed in the policy statement. At this time, this Court expressly finds that it has the discretion to consider circumstances beyond those set forth in the policy statement as "extraordinary and compelling reasons," as the policy statement is outdated and

---

[1] In its Response, the Government cites *United States v. Spencer*, 2020 WL 5498932 (6th Cir. Sept. 2, 2020), in support of the proposition that courts are bound by U.S.S.G. § 1B1.13. However, the *Spencer* court was reviewing the application of these factors to the defendant by the district court for an abuse of discretion. *Id.* The Sixth Circuit did not consider whether the policy statement was actually applicable, as that issue was not before it on appeal.

inapplicable in cases where BOP has not opted to bring a motion for compassionate relief and/or sentence reduction on a defendant's behalf.

### B.  Whether the Defendant has Set Forth "Extraordinary and Compelling Reasons" for Sentence Reduction.

In his motion, Mr. Taniguchi presents arguments addressing two of the four categories of "extraordinary and compelling reasons."[2] His primary argument is that Congress's amendment of § 924(c) in the FSA constitutes an extraordinary and compelling reason for a sentence reduction. (ECF No. 267). Specifically, Mr. Taniguchi argues that his 504-month mandatory minimum sentence was the result of a "prosecutorial practice of 'stacking' § 924(c) charges in the same indictment without a previous § 924(c) conviction." (*Id.*). As a result, Mr. Taniguchi was subject to a mandatory minimum sentence of 384 months for two § 924(c) convictions, to run consecutive to his 120-month sentence for his Hobbs Act violations. (*Id.*). Mr. Taniguchi argues that his sentence is now 18 years longer than what Congress has now deemed an "adequate punishment for comparable § 924(c) conduct." (*Id.*). He further argues that there is a gross disparity between the sentence that he received and the sentence he would now receive after the FSA amended § 924(c) in 2018. (*Id.*). In Response, the Government reiterates that Mr. Taniguchi has failed to present arguments that comport with the § 1B1.13 policy statement, that a retroactive application of Section 403 of the FSA is inappropriate here,[3] and that the decisions relied upon by Mr.

---

[2] Mr. Taniguchi also presented arguments regarding his age and family circumstances in his Motion for Sentence Reduction, but this court finds that his age (51) and the family circumstances that he presented (a need to care for aging parents) do not themselves constitute "extraordinary and compelling reasons" standing alone.

[3] The Government relies on *United States v. Richardson*, 948 F.3d 733, 745–53 (6th Cir. 2020), for the proposition that Section 403 does not apply retroactively to a Section 924(c) sentence imposed prior to the passage of the FSA. However, Mr. Taniguchi is not seeking a resentencing in accordance with Section 403; rather, he is asking this Court to consider the length of his sentence, the COVID-19 pandemic and his health, his family circumstances, and his time served as extraordinary and compelling reasons for release under a different provision of the FSA. *See, e.g.*, *United States v. Martin*, No. 08-20011, 2020 WL 4530447, at *1 (E.D. Mich. Aug. 6, 2020) (noting the Government's retroactivity arguments under *Richardson* are "well-taken, but [] not entirely dispositive" where a defendant sought relief under Section 3582 rather than a direct application of the FSA's amendments to Section 924(c), but declining to reach the issue as the defendant had failed to exhaust his administrative remedies); *United States v. Turns*, No. 2:99-cr-104-1, 2020 WL 2519710, at *4 (S.D. Ohio May 18, 2020) (same); *see also United*

6

Taniguchi are unpersuasive. (ECF No. 269 at 11–12). In his Reply, the Defendant emphasizes that a number of courts have reduced the sentences of individuals with pre-First Step Act 924(c) charges. (ECF No. 271 at 3).

Mr. Taniguchi's § 924(c) "stacking" argument receives support from a recent decision in *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020), in which a court found that the drastic change from the FSA's amendment of § 924(c) could, in combination with other factors, constitute an extraordinary and compelling reason for a sentence reduction. 2020 WL 1047815, at * 8. The *Young* court noted that Congress amended § 924(c) to require an intervening conviction before the harsh second-conviction penalties could be triggered. *See id.* (discussing amended language of 924(c) that unambiguously requires a "violation of this subsection that occurs after a prior conviction under this subsection has become final" before the penalties are triggered). As a result, the defendant in *Young* would only face a mandatory minimum sentence of 25 years, rather than his original mandatory minimum sentence of 92 years. *Id.* at *8–9. In light of this drastic change under the FSA, as well as the defendant's age, his chronic illness, and the amount of time served (19 years), the *Young* court granted the defendant's motion for a sentence reduction and scheduled a hearing at which the parties would present argument regarding what would be an appropriate sentence under 18 U.S.C. § 3553. *Id.* at *10.

In *United States v. Brooker*, the Second Circuit explained that, as a matter of law, a court would not necessarily abuse its discretion by granting someone compassionate release or a sentence reduction under the FSA where the defendant presents § 924(c) arguments, in combination with other compelling reasons for release. 976 F.3d 228 (2d Cir. 2020). The court

---

*States v. Moore*, --- F. Supp. 3d ---, 2020 WL 4926601, at *7 (noting that Congress chose not to make 924(c) retroactive, but suggesting that "the gross unfairness resulting from [Congress's] failure," when presented with other compelling circumstances, could warrant a sentence reduction).

emphasized that the only statutory limitation on courts' discretion in these matters is 28 U.S.C. § 994(t)'s command that rehabilitation alone cannot constitute an extraordinary and compelling reason. *Id.* The Second Circuit found, however, that the age of the defendant at the time he was sentenced, the sentencing court's concerns about the injustice of his lengthy sentence, and the disparity between his sentence and the present sentencing regime, set against the backdrop of the coronavirus pandemic, could constitute extraordinary and compelling circumstances. *Id.* The Second Circuit highlighted the COVID-19 pandemic as a factor weighing toward sentence reduction, despite the fact that the defendant had made no health-based arguments in the case. *Id.*

Other courts have granted motions to reduce sentences premised on "stacking"-elimination arguments, particularly where pre-amended, stacked § 924(c) charges in a single indictment would "spell[] the difference between thirty years in or out of prison" post-FSA amendment. *United States v. Haynes*, 456 F. Supp. 3d 496, 514 (E.D.N.Y. 2020); *see also id.* (concluding that "the FSA' elimination of the § 924(c) sentencing weaponry that prosecutors employed to require that sentence is an extraordinary and compelling circumstance warranting relief"); *United States v. Moore*, --- F. Supp. 3d ---, 2020 WL 4926601, at *7 (M.D. Tenn. Aug. 21, 2020) (finding that 924(c) "standing alone" cannot justify release, but that sentence reduction may be justified where stacking arguments are presented "in combination with other compelling circumstances"); *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *4 (E.D. Mich. Aug. 13, 2020) (granting motion to reduce sentence in part because of the "disparity between [Defendant's] sentence and those sentenced for similar crimes after the First Step Act"); *United States v. Clausen*, No. 00-291-2, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020) (granting motion to reduce sentence where 924(c) stacking resulted in 205-year mandatory minimum, defendant had completed 20 years of sentence, and defendant showed "remarkable record of rehabilitation"); *but see United States v.*

*Avery*, No. 2:07-cr-20040-2, 2020 WL 3167579, at *7 (W.D. Tenn. June 9, 2020) (denying motion to reduce sentence premised solely on defendant's rehabilitation and stacking arguments).

Like the defendants in *Young*, *Brooker*, and other § 924(c) "stacking" cases, Mr. Taniguchi would receive a dramatically different sentence today as the result of the FSA amendment to § 924(c). He argues that under the current law, he would be subject to a sentence of 24 years, rather than his current sentence of 42 years. (ECF No. 267). The Government does not dispute that, under today's sentencing regime, Mr. Taniguchi would have only faced a sentence of 7 years on his second Section 924(c) count, rather than the mandatory 25-year penalty, for a total sentence of 24 years. (ECF No. 269 at 2). Mr. Taniguchi also notes that this 42-year sentence was "22 years longer" than what the Government thought "at the time" was an adequate punishment for his conduct, based on the plea offer he was given. (*Id.*). As of October 2020, Defendant has served nearly 20 years of his sentence. (*Id.*). Mr. Taniguchi was subject to two § 924(c) charges in a single indictment, but there was no intervening conviction—as would be required today to trigger the second-conviction sentencing enhancement under the current version of § 924(c). His sentence is now 18 years longer than what Congress has set as the adequate level of punishment for comparable § 924(c) conduct, resulting in a gross disparity between the sentence imposed against Mr. Taniguchi in 2000 and the type of sentence that would be imposed if Mr. Taniguchi was convicted of such conduct today.

Furthermore, Mr. Taniguchi presents additional reasons that, when considered in conjunction with his "stacking" argument, constitute an "extraordinary and compelling reason" justifying a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Mr. Taniguchi argues that his medical conditions, in light of the COVID-19 pandemic, also present "extraordinary and compelling reasons" justifying a reduction in sentence. He maintains that he has heart disease,

hypertension, and abnormal heart arrythmia which "collectively place him at a greater risk of fatally contracting COVID-19." (ECF No. 267). Mr. Taniguchi has not submitted any medical records documenting these claims, but in its Response, the Government filed Mr. Taniguchi's medical records under seal and confirmed that he suffers from hypertension, abnormal heart rhythm, and an unspecified bundle branch block (a cardiac condition). (ECF No. 269 at 17). The Government contends that his conditions do not definitively place him at an increased risk of severe illness or death, but rather that his hypertension only "might" place him at a risk of severe illness or death. (*Id.* at 18).

As a threshold matter, this Court recognizes the devastating impact of the COVID-19 pandemic and that prison populations are subject to heightened vulnerability. The spread of COVID-19 in prisons has been well documented and FCI Jesup, where Mr. Taniguchi is confined, was the source of a national hot spot in Georgia for COVID-19, with over 200 cases as of late July 2020.[4] With respect to Mr. Taniguchi's medical conditions, the CDC has indicated that individuals with serious underlying health conditions—including cardiovascular issues and hypertension— might be at a higher risk for severe illness from COVID-19.[5] This Court also notes that, while rehabilitation alone will not constitute an extraordinary and compelling reason under the FSA, Mr. Taniguchi's demonstrated rehabilitation during his time of incarceration, in conjunction with other factors, contributes to a finding of "extraordinary and compelling reasons" justifying a reduction in his sentence. In his Reply, Mr. Taniguchi details the number of ways in which he has used his

---

[4] Andy Miller, Rome News Tribune, *South Georgia Prison COVID-19 Cases Fuel New Hot Spot; State's Map Draws Criticism*, https://www.northwestgeorgianews.com/rome/news/local/south-georgia-prison-covid-19-cases-fuel-new-hot-spot-state-s-map-draws-criticism/article_d89ee144-ccdb-11ea-975a-7fd1e7b6d0b4.html, last accessed 9/17/2020 at 5:00 p.m.
[5] *See* CDC, *People Who Are at Higher Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html, last accessed 10/28/2020 at 2:00 p.m.

period of incarceration to better himself. He has received several professional certifications, completed several college courses via Ohio University's program from incarcerated individuals and received a degree from New River Community and Technical College, and been steadily employed by Federal Prison Industries – UNICOR for 18 years.

In combination, Defendant's health conditions, which may place him at a higher risk of severe illness from COVID-19, his lengthy conviction under § 924(c), the FSA amendments to § 924(c), his demonstrated rehabilitation, and his time served, together present "extraordinary and compelling reasons" justifying a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A).

### C.  Requested Relief and the § 3553(a) Sentencing Factors.

Although Defendant's motion is styled both as a motion for reduced sentence and a request for "compassionate relief," this Court has no obligation to modify the sentence in a way that effectuates his immediate release from prison. A downward adjustment may be made, "even if it results in continued incarceration." *Young*, 2020 WL 1047815, at *10; *see also United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at *4  (D. Ne. Nov. 14, 2019) (noting that a reduction of sentence would not make the defendant eligible for immediate release but that a "reduction of sentence at this juncture" would help both the defendant and BOP plan for his ultimate release"). The Court must also consider the sentencing factors in § 3553(a), including:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... issued by the Sentencing Commission ...;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). As neither Mr. Taniguchi nor the Government have addressed the relevant § 3553 factors, this Court finds that a hearing to consider these factors will provide the most appropriate means for this Court to determine the appropriate sentence in this case.

### III.    CONCLUSION

For these reasons, Mr. Taniguchi's Motion for Sentence Reduction (ECF No. 267) is **GRANTED**, and the Court will schedule a hearing at which parties will present arguments regarding what would be an appropriate sentence in light of the § 3553 factors.

**IT IS SO ORDERED.**


         **/s/ Algenon L. Marbley**
         **ALGENON L. MARBLEY**
         **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  November 2, 2020**